**FORM 5. Petition for Review or Notice of Appeal of an Order or Decision of an Agency, Board, Commission, Office, Bureau**

Form 5
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

Tiffany M. Potter

_____ ,    **Petitioner or Appellant,**

**v.**

Department of Veterans Affairs

_____ ,    **Respondent or Appellee.**

## PETITION FOR REVIEW

Notice is hereby given that the following party/parties*  Tiffany M. Potter
_____

hereby petition(s)/appeal(s) the court for review of the order of the  Merit Systems

Protection Board_____ entered on _____9/16/20_____. The order or decision was received

on ____9/16/20____.

Date: ____12/18/20_____

Signature: ___/s/ A. Marques Pitre, Esq.___

Name: ____A. Marques Pitre, Esq.____

Address: __Pitre & Associates, LLC__

__1300 Pennsylvania Avenue, Ste. 700__

__Washington, DC 20004__

Phone Number: __(202) 204-3006__

Email Address: __ampitre@ampitreassociates.com__

*_See_ Fed. R. App. P. 15(a)(2) for permissible ways of identifying petitioners.

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### DENVER FIELD OFFICE

TIFFANY POTTER,

          Appellant,

  v.

DEPARTMENT OF VETERANS
    AFFAIRS,

          Agency.

DOCKET NUMBER
DE-1221-18-0165-M-1

DATE: September 16, 2020

Marques Pitre, Esquire, Washington, D.C., for the appellant.

Michelle De Vera, Washington, D.C., for the appellant.

Scott MacMillan, Phoenix, Arizona, for the agency.

**BEFORE**
David S. Brooks
Administrative Judge

## INITIAL DECISION

### INTRODUCTION

In this individual right of action (IRA) appeal, appellant Tiffany Potter alleges, *inter alia*, whistleblower reprisal in the agency's November 2015 cancellation of a vacancy. After my first decision found that prima facie claim unsubstantiated, the Federal Circuit vacated that finding and remanded. *Potter v. Department of Veterans Affairs*, 949 F.3d 1376, 1380 (Fed. Cir. 2020); MSPB Docket No. DE-1221-18-0165-M-1, Remand Appeal File (RAF). Subsequently, the appellant requested a decision based on the written record, which closed on June 24, 2020. RAF, Tab 15.

As analyzed below, I find (1) the appellant established her prima facie claim of whistleblower reprisal for the November 2015 nonselection, but (2) the agency met its burden to show that it would have taken the same actions absent her whistleblowing. Consequently, I must DENY the appellant's request for corrective action.

## ANALYSIS AND FINDINGS

A. <u>Background</u>

The appellant was a Nurse III for the Phoenix V.A. Healthcare System. MSPB Docket No. DE-1221-18-0165-W-1, Initial Appeal File (IAF), Tab 67 at 2-3 (December 13, 2018 initial decision ("ID")). On February 13, 2018, the appellant filed this IRA appeal, DE-1221-18-0165-W-1 (W-1), alleging several instances of whistleblower reprisal.

For the W-1, I convened a hearing on October 22 and 23, 2018, and I issued an initial decision on December 13, 2018. ID at 1 (W-1). My December 13, 2018 initial decision found the appellant met her burden, under 5 U.S.C. § 1221(e)(1), to establish a statutory presumption that her whistleblowing was a contributing factor to her March 2015 change in duties, but that the agency met its burden, under 5 U.S.C. § 1221(e)(2), to show that it would have taken the same action (changed her duties) absent her whistleblowing. ID at 2. My December 13, 2018 initial decision found the appellant did *not* meet her burden to establish a statutory presumption that her whistleblowing was a contributing factor to the November 2015 vacancy cancellation, January 2017 detail and April 2017 reassignment/resignation. ID at 2. Based on those findings, my December 13, 2018 initial decision denied the appellant's request for corrective action. ID at 2 (W-1).

On appeal at the U.S. Court of Appeals for the Federal Circuit, the Court vacated my December 13, 2018 initial decision's conclusion that the appellant did not establish a prima facie whistleblower reprisal claim related to her November

2015 nonselection, because that conclusion was based upon an incorrect finding. *Potter*, 949 F.3d at 1379-80 (citing ID at 15-16, and stating that "the parties agree that the administrative judge incorrectly found that [Chief of Staff] Dr. [Darren] Deering did not have knowledge of Ms. Potter's second protected disclosure, i.e., her July 10, 2014 email"). Indeed, my factual error was clear and not simply a matter of opinion; as the Federal Circuit noted, my own December 13, 2018 initial decision had first stated the relevant fact correctly, before it later stated it incorrectly. *Id.* (Federal Circuit's reference to my ID at 8, which had stated, "The appellant established that she made a protected disclosure to Venditti and others on July 10, 2014. … Tab 63 at 28 (Venditti), 154 (Deering);" and to my ID at 15-16, which later stated, "The appellant did not establish that Deering had any knowledge of any of the appellant's disclosures before he made his decision to cancel the vacancy in November 2015"). I confess my error, and now retrace the steps prescribed by 5 U.S.C. § 1221(e).

In this remand proceeding, DE-1221-18-0165-M-1, I applied the Federal Circuit's decision and found two issues before me:

> Whether, in view of Dr. Deering's knowledge of Ms. Potter's July 10, 2014 email, Ms. Potter presented evidence sufficient to satisfy the knowledge-timing test, or if Ms. Potter otherwise presented evidence sufficient to demonstrate a prima facie case of whistleblower reprisal. [5 U.S.C. § 1221(e)(1).]

> If so, whether the government can meet its burden of showing that it would have taken the same November 2015 personnel action ("failure to hire") regardless of Ms. Potter's protected disclosure. [5 U.S.C. § 1221(e)(2).]

RAF, Tab 5 at 1-2. After conferring with the parties, I ordered a June 24, 2020 close of record for any further submissions. RAF, Tab 15 at 2. Although neither party made any substantive submission in response to my order,[1] they had already

---

[1] On the close of record date, June 24, 2020, the agency did not submit any new evidence but requested an extension to do so. RAF, Tab 16. I denied that request. RAF, Tab 18.

submitted exhibits from their Federal Circuit litigation in this case, which I have considered in rendering the instant initial decision.

B. Burdens of Proof and Applicable Law

The Whistleblower Protection Act (WPA) prohibits an agency from taking a personnel action because of any whistleblowing "disclosure" or activity. 5 U.S.C. § 2302(b)(8)-(9). The appellant has the burden to establish, by preponderant evidence, two elements: (1) she made a protected disclosure, and (2) her disclosure was a contributing factor to the agency's decision to take a statutorily covered personnel action against her. *Id.*; 5 U.S.C. § 1221(e)(1); 5 C.F.R. § 1209.2(e)(1). One way the appellant may demonstrate her disclosure was a contributing factor is by evidence that (A) the official taking the personnel action knew of the disclosure, and (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1)(A)-(B).

If the appellant meets her burden as described above, then she has established a prima facie case of whistleblower reprisal, and the burden passes to the agency, such that the Board will order corrective action, unless the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure. 5 U.S.C. § 1221(e)(2); 5 C.F.R. § 1209.2(e)(2).

C. The appellant MET her burden to establish a prima facie case that her July 10, 2014 disclosure was a contributing factor to her November 2015 nonselection.

As explained below, I find a preponderance of the evidence establishes that the appellant's July 10, 2014 disclosure was protected and was a contributing factor to her November 2015 nonselection; in other words, I find she has established a prima facie case of whistleblower reprisal. The agency essentially concedes the same. RAF, Tab 9 at 53 ("If the AJ had applied the board's

precedent with regard to timing, Ms. Potter would likely have satisfied the knowledge/timing test and states a prima facie case of whistleblower reprisal").

Pertinent to the appellant's prima facie case are five issues: (i) was the disclosure protected; (ii) was the nonselection a covered "personnel action;" (iii) did Deering know of the appellant's disclosure; (iv) did Deering know the appellant had applied for the vacancy; and (v) did Deering make the nonselection decision (by canceling the vacancy) in November 2015 in a period of time such that a reasonable person could conclude that the appellant's July 10, 2014 disclosure was a contributing factor to his decision? 5 U.S.C. § 1221(e)(1)(A)-(B).

Regarding issue (i) – was the disclosure protected – I find, as my previous initial decision found, that the appellant's July 10, 2014 email was a disclosure protected by 5 U.S.C. § 2302(b)(8). ID at 8. It bears repeating that the appellant's July 10, 2014 email was addressed to Fee Manager Ed Lowe, with a carbon copy to the appellant's supervisor, Dr. Robbi Venditti, D.O., and her email stated:

> Attached is part of the OIG spreadsheet for the patients awaiting psychotherapy. Of the 128 patients reviewed, 96 were never sent to Triwest by the authorization staff although the consult instructed to send to Triwest. 9 cases were sent to Triwest but never received by Triwest or loaded by the Triwest staff into their system. So only 23 of the 128 Psychotherapy patients were processed (oldest consult date 5/7/14). Many of these are suicidal and otherwise high risk cases per OIG notes. Please get the 96 cases sent to Triwest and the 9 other cases re-sent as soon as possible.

RAF, Tab 10 at 248-49. The Federal Circuit did not disturb my finding that the appellant's July 10, 2014 email was protected, and I see no reason to revisit the issue. *Potter*, 949 F.3d at 1379-80; ID at 8-9. Thus, I find, once again, that the appellant's July 10, 2014 email was a protected disclosure.

Regarding issue (ii) – was the November 2015 nonselection a covered "personnel action" – my previous initial decision assumed, without finding, that it was a personnel action under the WPA. ID at 15; 5 U.S.C. § 2302(A)(2)(A)(i)

("an appointment")-(ii) ("a promotion"). Complicating the issue of whether the nonselection was a personnel action is the fact that the agency cancelled the vacancy altogether, such that its action, facially, was not personal to the appellant. However, the Federal Circuit has found a cognizable personnel action "when the agency declines to hire an applicant pursuant to a vacancy announcement, but instead of hiring a different person cancels the vacancy announcement and hires no one for the position at that time." *Ruggieri v. Merit Systems Protection Board*, 454 F.3d 1323, 1325 (Fed. Cir. 2006). For such an action to be cognizable, the agency "must take some identifiable step that constitutes a decision not to hire the complainant," such as deciding "to terminate the hiring process that it had put into effect, by canceling the vacancy announcement," and sending the applicant "a letter advising him that he was not selected for the advertised position." *Id.* at 1326. There is no dispute that in the instant case, the appellant applied for the vacancy, and on November 5, 2015, she received an email stating, "The hiring office has decided not to fill the position at this time." RAF, Tab 10 at 263-64. Based on these circumstances, I find that the November 2015 vacancy cancellation was a covered personnel action. 5 U.S.C. § 2302(A)(2)(A)(i)-(ii).

Regarding issue (iii) – did Deering (who cancelled the vacancy) know of the appellant's July 10, 2014 email disclosure – I find he did. As my initial decision noted – before forgetting – Deering was in fact aware of the appellant's email disclosure. ID at 8, 15-16. That is because later the same day of July 10, 2014, the appellant forwarded her email disclosure to Deering, among others. RAF, Tab 10 at 247-49. Notably, at the end of the appellant's July 10, 2014 email forward, the appellant stated to Venditti: "With respect I bring this to your attention first without fear of reprisal or negative consequences, but faith the right decision will be made in a supportive and proactive way." *Id.* at 248. Notably, later the same day of July 10, 2014, Deering responded by email privately to the appellant, stating:

Tiffany,

Thanks for bringing this to my attention.

This sounds like you need more frontline help with workload and we have approved additional FTEE (I sent you that email).

It may take some time to recruit them, so let me speak to nursing to see who we can detail over quickly on a temporary basis.

I'll also explore the possibility of using TNC staff to support us until our permanent positions are hired.

Let's sit down and look at your proposals regarding restructuring of leadership roles again.

I don't think – by HR regulations – we can just grant someone an ACNS role. If we are able to get it approved, I believe it would have to be competed. But, let me double check on that.

I'm not sure why you feel there might be reprisal, so please stop by so we can discuss this so I can determine if there are other issues I need to intervene on.

I appreciate everything you are doing for our veterans.

Darren

*Id.* at 247. The parties agreed that Deering learned of the appellant's July 10, 2014 email disclosure, and the Federal Circuit did not disturb my initial statement that Deering was forwarded the same email on the same date (save my later discrepant finding), and so I see no reason to revisit that particular finding. ID at 8,15. Thus, I find Deering knew of the appellant's July 10, 2014 disclosure.

Regarding issue (iv) – did Deering know the appellant had applied for the vacancy, I consider this question material because if Deering did not know or believe the appellant had applied, then Deering could not be said to have canceled the vacancy with the goal of keeping the appellant from getting the job. Upon my re-review of the W-1 hearing transcript, I see that Deering testified that his "assumption" was that the appellant had applied for the vacancy. IAF, Tab 56 at 224-25. Based on that, I find Deering believed the appellant had applied for the vacancy, and so I find this issue answered in favor of the appellant's prima facie case.

Regarding issue (v) – did Deering make his nonselection in a period of time such that a reasonable person could conclude that the disclosure was a contributing factor – the time gap is approximately sixteen months between the appellant's July 10, 2014 email disclosure and Deering's November 1, 2015 direction for the agency to cancel the vacancy. I find a reasonable person could conclude that these two events were connected. Therefore, I find the appellant satisfied the knowledge/timing test and – reaching the ultimate issue of this part of the appeal – I find the appellant satisfied her burden to establish her prima facie case that Deering's November 2015 nonselection was whistleblower reprisal for her July 10, 2014 disclosure. 5 U.S.C. § 1221(e)(1)(A)-(B).

D. <u>The agency MET its burden to demonstrate that it would have taken the same action absent the appellant's disclosure</u>.

Because the appellant established a prima facie case of whistleblower reprisal, linking her July 10, 2014 disclosure to her November 2015 nonselection, the burden shifts to the agency to establish by clear and convincing evidence that it would have taken the same action in the absence of those disclosures. 5 U.S.C. § 1221(e)(2); 5 C.F.R. § 1209.2(e)(2). Clear and convincing evidence – that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established – is a higher standard than the "preponderance of the evidence" standard. 5 C.F.R. § 1209.4(e); 5 C.F.R. § 1201.4(q). Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (2012). In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the

agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999) ("*Carr* factors").

1. Findings of Fact

The below facts overlap somewhat with the above, but they are pertinent to the discrete issues now before the Board in applying the *Carr* factors to Deering's November 2015 cancellation of the vacancy.

On July 10, 2014, the appellant made her email disclosure about a majority of a group of "suicidal and otherwise high risk" patients not being referred, as instructed, for psychotherapy. RAF, Tab 10 at 248-49 (July 10, 2014 disclosure). On the same day, the appellant forwarded that disclosure to Deering. *Id.* at 247. On the same day, Deering sent two private responses to the appellant: (1) thanking her (as quoted above), and (2) stating: "p.s. can you please bring the OIG notes and p[atien]t names you [are] referencing below when we meet so I can review and make sure we have a plan for them?" *Id.* at 247, 250.

Five months later, on December 8, 2014, the Phoenix VA's leadership recognized the appellant on its new organization chart as "Chief Nurse Manager," under Purchased Care, and the appellant considered the "Chief Nurse Manager" title to be beneficial to her. ID at 3; IAF, Tab 44 at 50 (December 2014 chart). Among the leadership officials who signed the new organization chart were: Venditti, on October 7, 2014; Deering, on November 24, 2014; and Grippen, on December 8, 2014. *Id.*

Three months later, on March 19, 2015, the agency took back the "Chief Nurse Manager" title in a revised organization chart, and recognized the appellant as "Nurse Manager" over Utilization Review.  ID at 12; IAF, Tab 44 at 51 (March 2015 chart). Once again, the reorganization chart was signed by Venditti, Deering, Grippen, as well as other individuals. *Id.* (March 19, 2015). The

appellant alleged this was whistleblower reprisal, and I found a prima facie case of that, but I also found that the agency met its burden to demonstrate by clear and convincing evidence that it would have taken the same action regardless of the appellant's whistleblowing. ID at 12-14, 28. The Federal Circuit affirmed that finding. *Potter*, 949 F.3d at 1381.

Five months later, on or about August 10, 2015, the agency posted a vacancy for "Registered Nurse, Chief Nurse Administrative Medicine Service." ID at 3; RAF, Tab 10 at 263-64. The appellant and three others applied for the vacancy, and the agency's recruitment for the vacancy closed on August 24, 2015.  ID at 3; IAF, Tab 53 at 298; RAF, Tab 10 at 243. According to Deering: "I don't remember a specific conversation [with Potter about her applying] but I'm sure – my assumption was then that she applied." IAF, Tab 56 at 225 (Deering).[2] Also according to Deering: "I can't imagine somebody that would've been more qualified for it off the top of my head, but I don't think I ever promised that position to anyone." *Id.* at 168; *see also Id.* at 195 ("hard to find anyone more qualified"), 221 ("couldn't think of anybody more qualified"), 242 ("don't know of anyone else … more qualified").

Two months later, on November 1, 2015, Deering emailed Juanita Landry, Alyshia Smith, and others, stating of the vacancy:

> Juanita,
>
> I'm not sure who in HR to ask, but I need to close this cert with a non-selection.
>
> We need to have more discussion about the best way to structure this service (i.e. what sections should be in this service, where the nurse 4 should report, etc, etc) before we move toward a selection.

---

[2] Consistent with that recollection by Deering, Deering also testified: "I don't recall getting a cert list for this position. I remember that we got … what I seem to recall is that this got pulled back before we ever got to the point of even looking at who had applied or who had gone that pathway." IAF, Tab 56 at 180 (Deering); RAF, Tab 11 at 13 ("I don't believe I have access to selection manager").

ID at 15; RAF, Tab 11 at 14-15. The appellant did not allege that Venditti had any role in the vacancy cancellation, "because she was gone at the time." IAF, Tab 53 at 276. On November 5, 2015, the appellant received an automated email from OPM stating, "The hiring office has decided not to fill the position at this time." RAF, Tab 10 at 264.

The next year and a half saw changes to the status of three things: Deering's employment, the appellant's employment, and the agency's interest in advertising for the vacancy. First, in June 2016, the agency removed Deering, in an action evidently related to the "crisis" that had emerged at the Phoenix VA. IAF, Tab 53 at 155, 213, 336; ID at 19. Second, on February 8, 2017, the appellant received a tentative job offer in California, and on March 9, 2017, she received a confirmed job offer. ID at 26; IAF, Tab 45 at 80, 83. Third, on March 9, 2017, the agency directed an administrative officer to "enter an ARPA for Chief Nurse IV," which was a step in recruiting for the position. RAF, Tab 10 at 273 ("Master Smith gave the order" … "Belen [Ochoa] just e-mailed it to me five minutes ago and said Dr. Smith wants this today"). The appellant, responding to her learning of the agency's March 9, 2017 action, wrote, "Wouldn't that just be too convenient? I give my 2 week notice, and THEN they recruit for the Chief Nurse IV?" *Id.* Although the appellant alleges whistleblower reprisal in the timing of that last event, as explained below, I am convinced otherwise, and I find the agency met its burden to demonstrate by clear and convincing evidence that Deering would have cancelled the vacancy in November 2015 even if the appellant had never made her July 10, 2014 disclosure.

On March 17, 2017, the appellant filed her Office of Special Counsel complaint alleging whistleblower reprisal. IAF, Tab 1 at 18, 21.  In February 2018, the appellant filed the instant IRA appeal. IAF, Tabs 1 and 2.

2. *Carr* factor 1, agency reasons, weighs strongly in the agency's favor.

Returning to the *Carr* factors, the first factor is the strength of the agency's reasons for its action. *Carr*, 185 F.3d at 1323. This first of the three *Carr* factors does not apply straightforwardly when the personnel action is not disciplinary and, therefore, does not require supporting evidence of misconduct. *Azbill v. Department of Homeland Security*, 105 M.S.P.R. 363, ¶ 18 (2007); *Gonzales v. Department of the Navy*, 101 M.S.P.R. 248, ¶ 12 (2006). Deering's November 2015 vacancy cancellation was neither disciplinary nor personal to the appellant, and thus, is such an action. In such circumstances, when addressing the strength of the agency's evidence in support of its action, the Board considers the broader question of whether the agency had legitimate reasons for its action. *Id*.

In our 2018 hearing, Deering testified without dispute that he had tried, earnestly but unsuccessfully, to obtain agreement from multiple stakeholders, including the Office of Nursing Services, on the question of to whom the Chief Nurse would report, and Deering testified that lack of agreement on the answer to that question led him to indefinitely delay hiring anybody for the vacant position:

> A: I don't recall what precipitated this. I just know that we had had lots of discussion around – as a leadership team about how this should be structured, how it should be ran as a service, whether we get approval for a Nurse 4 or not, was in (indiscernible) whoever approved that. So I don't remember specifically what caused us to pull it back, but I know that there – we decided before we moved forward, that we needed to have some discussion about the reporting. As I recall at the time I think that, and I could be wrong on the date, but I seem to recall that – I don't (indiscernible) stuff here at that time. But I think there was discussion about whether or not there should be a dyad structure or not. I think that was a lot of discussion about how that works, who reports to whom, and we wanted to get that clarified before we went forward with the selection, as I recall.
>
> Q: Do you recall… there being [a] push – that Administrative Medicine said this was one of the first, if you recall, it was one of the first departments at the Phoenix VA to try and use the dyad structure?

A: Well, gosh, as I recall, I mean, I think this was one of the first ones we tried to reorganize to get, you know, the – their structure in place.

Q: Was it your understanding that Mr. Grippen had hoped to use the dyad structure, not only in Administrative Service – Administrative Medicine service, but [in] other areas of the 8 organization?

A: Yeah, he was – he was a fan of the dyad structure, and I think that's what he wanted to see incorporated. But I – I remember we kept getting feedback from other leaders who were rotating through, there were just so many people coming from the leadership team. And we kept getting feedback that that's not an ideal structure, that there are lots of concerns with that and – and I just remember lots and lots of – what that structure looks like, not who's in it but what does that look like for each service and, you know, if you have that then does the – the Nurse Exec, you know, the Chief Nurse report to the Nurse Exec, or to a physician. I mean there was just tons and tons of discussion around that, which kept being a burr, if you would, and us getting some of this, you know, finalized.

\* \* \*

Q: Do you recall if the dyad structure that Mr. Grippen had proposed – if the nurse and the physician chief were supposed to be co-equals?

A: [A]s I recall, that's what Mr. Grippen had embraced, was this idea where they were – they were co-leaders of the section. There was a lot of consternation from Nursing Service that they didn't want their – their nursing supervisors reporting, you know, to the Chief of Staff. They thought that they should report to the Nursing Service. And the part of this discussion was then we'd end up with an executive leader who didn't have oversight of the service. So we'd end up with a Nurse Exec and the Chief of Staff trying to manage every service, which would be very unwieldy. So there was a lot of discussion on that throughout this whole course of restructuring the services and how do we structure to their lateral function and Nursing Service would maintain their scope of responsibility in the hospital.

IAF, Tab 56 at 182-85 (Deering testimony).

In weighing Deering's testimony about the above matters, I have considered the fact that his recollection was admittedly less than certain as to the precise series of events leading up to his November 2015 decision to cancel the

vacancy. But that was hardly surprising: the appellant did not challenge Deering's November 2015 vacancy cancellation until (i) sixteen months after Deering's decision and (ii) ten months after Deering's removal, and Deering's decision was never overtly personal to the appellant or any individual. That passage of time, along with Deering's departure from the agency, gives me no reason to assume that Deering would have a firm handle of the nuances of his decision to cancel a vacancy in November 2015. I simply find no basis to conclude that Deering's November 2015 decision stood out in his memory in the same manner as it did for the appellant.

In weighing Deering's testimony, I found Deering's overall picture of events to be consistent, both internally and when compared with the testimony of Venditti and Grippen. IAF, Tab 56 at 45 (Venditti, "12/8/14 [organization chart] … was trying to get Tiffany recognition … because we had been blocked at every avenue on getting a chief nurse position"); 75-76 (Venditti, "I was making efforts to get approval to start the process to get a chief nurse position … So we obviously didn't have one [a process] … Darren had went to other nurse executives and was told the same thing, that there was not enough complexity in the department. For a nurse 4"); 124 (Grippen, "the organizational chart in Milwaukee … I was looking at trying to implement something similar"); 144 (Grippen, "the Milwaukee model was controversial … nurses report to physicians, and we were making them full equals").

In considering Deering's credibility overall, I found him to be a quite credible witness, consistent in his testimony, and sincere, even in the face of difficult questioning by the appellant. ID at 31. Credibility determinations properly made in one matter may be weighed in determining a speaker's credibility in another matter. *Hawkins v. Smithsonian Institution*, 73 M.S.P.R. 397, 403-04 (1997). I found Deering credible in his non-retaliatory explanation of why he participated in changing the appellant's duties in March 2015, in part because the appellant's theory that her March 2015 duties change was motivated

by reprisal was inconsistent with Deering's November 2014 approval of the organization chart that had a position title the appellant actually preferred. ID at 14, 29. I also find *no* basis to doubt the sincerity of Deering's reasoning based on the agency's actions in March 2017 to re-post the vacancy, since Deering had been gone from the agency for nine months by that time and has not been shown to have any role in the agency's March 2017 actions. In sum, I found Deering's recollection of why he cancelled the vacancy in November 2015 was quite credible, and I conclude that *Carr* factor 1 – the agency's reasons – weighs heavily in the agency's favor.

   3. *Carr* factor 2, retaliatory motive, weighs only modestly in the appellant's favor.

   In evaluating whether the agency met its burden of defense, the second of the three *Carr* factors, existence of agency motive to retaliate, comes down to Deering's motive to retaliate against the appellant for her July 10, 2014 disclosure.

   Conceptually, I accept that Deering had an ostensible motive to retaliate against the appellant for her disclosure, because the problems she raised tended to reflect unfavorably upon Deering's management and put Deering in the place of having to choose between working to try to address her concerns, or doing nothing and fearing further consequences. But at the same time, I cannot ignore the evidence contrary to an inference that Deering bore animus against the appellant for her July 10 2014 disclosure. Specifically, on July 10, 2014, Deering immediately expressed appreciation to the appellant for her disclosure and pledged to take corrective action. RAF, Tab 10 at 247, 250. Moreover, four months later, on November 24, 2014, Deering signed to approve an organization chart that the appellant preferred. ID at 14; IAF, Tab 44 at 50. Those are not the actions one would expect of a man determined to retaliate against the appellant for her July 10, 2014 disclosure. Nonetheless, taking a straitjacketed approach to

the question of motive, I accept that Deering had a motive – albeit slight – to retaliate.

Based on the foregoing, I conclude that *Carr* factor 2 – motive to retaliate – weighs modestly in the appellant's favor.

### 4. *Carr* Factor 3, Similarly Situated Individuals

Lastly, the third of the three *Carr* factors, whether there is evidence that similarly situated individuals who did not blow the whistle were treated similarly – neither party has submitted evidence for this factor. To be sure, I considered the fact that the record contains evidence that three other individuals also applied for the vacancy and thus were also affected by Deering's November 2015 vacancy cancellation. ID at 3; IAF, Tab 53 at 298; RAF, Tab 10 at 243. However, neither party adduced any evidence as to those other applicants' qualifications or status as whistleblowers or non-whistleblowers.

In *Whitmore*, the Federal Circuit stated that "Carr does not impose an affirmative burden" on the Government to produce evidence regarding each factor, and stated that the factors are "appropriate and pertinent considerations" to be used in determining if the agency carries its burden of establishing by clear and convincing evidence that it would have taken the same action had the protected disclosures not occurred. *Whitmore*, 680 F.3d at 1374. Here, I find that the last *Carr* factor is neutral.

In considering all three factors together, I find that *Carr* factor 1 weighs heavily in the agency's favor, *Carr* factor 2 weighs only modestly in the appellant's favor, and *Carr* factor 3 is neutral. Therefore, I conclude that the evidence as a whole leans strongly in the agency's direction, and that the agency thus met its burden to prove by clear and convincing evidence that it would have cancelled the November 2015 vacancy even if the appellant had never made her July 10, 2014 disclosure. 5 U.S.C. § 1221(e)(2). Thus, I must deny corrective action for the nonselection.

E. <u>Conclusion</u>

Having reviewed the claims of the appellant, but finding no prima facie cases of whistleblower reprisal for which the agency did not meet its burden of defense, I must deny the appellant's request for corrective action. 5 U.S.C. § 1221(e)(1)-(2).

## DECISION

The appellant's request for corrective action is DENIED.

FOR THE BOARD:                    _____/S/_____
                                 David S. Brooks
                                 Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **<u>October 21, 2020</u>**, unless a petition for review is filed by that date.  This is an important date because it is usually the last day on which you can file a petition for review with the Board.  However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision.  If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first.  You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

## NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place. Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time. *See* 5 U.S.C. § 1203. Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate. The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

### Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A

reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery

service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above.  5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

(1) **Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date this decision becomes final</u>. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this</u>

decision becomes final under the rules set out in the Notice to Appellant section, above.    5 U.S.C. § 7703(b)(2);  *see Perry v. Merit Systems Protection Board*, 582 U.S. _____ , 137 S. Ct. 1975 (2017).  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after this decision becomes final as explained above.  5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx